**FILED**

**June 22, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.W.**

**No. 19-1183** (Kanawha County 19-JA-238)

## MEMORANDUM DECISION

Petitioner Grandmother A.B., by counsel Joseph H. Spano Jr., appeals the Circuit Court of Kanawha County's November 20, 2019, order terminating her guardianship rights to A.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), J. Rudy Martin, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and denying her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner exposed the child to drug use. The DHHR alleged that petitioner was A.W.'s grandmother as well as his legal guardian. According to the petition, the DHHR received several referrals that multiple adult family members resided in petitioner's home where they abused drugs. The DHHR also alleged that several children, including A.W., resided in the home while various adults were using drugs.[2] According to the petition, petitioner abused methamphetamine and Subutex inside the home with the biological mother. The DHHR alleged that there was a protective order prohibiting

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The proceedings in circuit court concerned additional children that are not petitioner's biological grandchildren. Petitioner raises no assignment of error regarding these children. Accordingly, these children are not the subject of this memorandum decision.

1

A.W.'s biological father from having contact with the child, but that petitioner allowed the father to have contact with the child inside her home. The DHHR alleged that the father used methamphetamine and Subutex inside petitioner's home as well. A Child Protective Services "(CPS")" worker interviewed the mother at petitioner's home three times, and each time the mother denied using drugs. The CPS worker observed marks and scars on the mother's hands and wrists that appeared to be from intravenous drug use. The CPS worker noted that the mother admitted that the father was using drugs in the home but then later denied the same. According to the petition, the CPS worker interviewed A.W. twice, and he disclosed that his father resided in petitioner's home. The DHHR alleged that A.W. was forced to leave petitioner's home at one point and live with his aunt, who he says beat and mistreated him. The DHHR alleged that A.W. disclosed witnessing his parents abusing drugs and engaging in domestic violence in petitioner's home. As a result, the DHHR alleged that petitioner failed to provide a safe and stable home, engaged in substance abuse in front of the child, and neglected the child's educational and medical needs. Later that month, the circuit court held a preliminary hearing wherein it granted the DHHR legal and physical custody of the child and ordered the DHHR to provide petitioner with services, including parenting and adult life skills classes and drug screens.

The circuit court held an adjudicatory hearing in May of 2019 wherein petitioner stipulated to abusing drugs and exposing the child to domestic violence in the home. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing and neglecting guardian. Petitioner then moved for a post-adjudicatory improvement period. The circuit court held the motion in abeyance pending petitioner's dispositional hearing.

In July of 2019, the circuit court held a hearing wherein it considered petitioner's pending motion for a post-adjudicatory improvement period. At the hearing, the DHHR and guardian presented concerns about petitioner's new drug treatment program, her compliance with that program, and variations that had been detected in her drug screen results. However, the DHHR informed the circuit court that it was not seeking termination of petitioner's rights at that time. As a result, the circuit court again held petitioner's motion for an improvement period in abeyance and ordered that petitioner present medical testimony as to her treatment program to determine the treatment program's efficacy and compliance with state laws. The circuit court also ordered that petitioner provide any medical evidence that would explain the variations in her drug screen results.

The circuit court held a hearing in September of 2019 where petitioner again moved for a post-adjudicatory improvement period. At the hearing, a CPS worker testified that petitioner was complying with some services, including adult life skills classes and individualized parenting. The worker also testified that there were unexplained fluctuations in petitioner's drug screen results for Suboxone, which suggested levels beyond her prescriptions. The DHHR moved to admit petitioner's drug screen from the day of the hearing, which was positive for methamphetamine and Suboxone. The circuit court admitted the drug screen into evidence. Next, petitioner's physician testified as to petitioner's prior drug screens. The physician testified that petitioner was noncompliant with her prescribed Suboxone treatment, had received two prior warnings about noncompliance, and would be removed from the program if she violated the program's policies again. Finally, petitioner testified that she tested positive for methamphetamine because she was drugged by her daughter who was attempting to make her look irresponsible. As such, petitioner

denied knowingly using methamphetamine, despite contrarily admitting it was "not likely" that her drink was spiked with that drug. Petitioner also testified that she would stop using drugs, if granted an improvement period. After considering the evidence, the circuit court found petitioner's testimony incredible and that she attempted to manipulate her drug screen results provided to the circuit court. The circuit court also found that petitioner could not be and would not be a suitable guardian. As a result, the circuit court ordered that the DHHR cease providing petitioner with services unless she entered a residential drug treatment program. Finally, the circuit court ordered the DHHR to assist petitioner in locating a nine-to-twelve-month rehabilitation program.

The next month, the circuit court held the final dispositional hearing. At the hearing, a CPS case manager testified and recommended the termination of petitioner's guardianship rights. The CPS case manager testified that petitioner tested positive for methamphetamine on seven or eight occasions and was close to being removed from her Suboxone program. The CPS manager further testified that petitioner was ordered to find a nine-to-twelve-month treatment program, but that she failed to even finish a seven-day detoxication program necessary to transition her into an inpatient program. The CPS manager testified that petitioner signed herself out of the seven-day program and then failed to participate in further scheduled drug screens. The DHHR also moved for a Facebook post that petitioner wrote to be entered into evidence. In that social media post, petitioner wrote that she would not participate in long-term drug treatment and that it was unfair that the children's parents' parental rights were terminated. The circuit court noted that petitioner had signed a confidentiality order about the proceedings in April of 2019. The circuit court advised the parties that it would give petitioner an opportunity to testify and demonstrate that her actions were not contempt of the court's orders. As petitioner began to testify, the circuit court suspended petitioner's testimony and directed petitioner's counsel to confer with petitioner and advise her of the consequences of contempt before she testified further. Upon her return, petitioner stated she wanted to present her case to a jury as to whether she should be held in contempt. In response, the circuit court directed the DHHR to subpoena Facebook to obtain copies of similar posts by petitioner for the jury's consideration. Next, the DHHR presented the testimony of a court appointed special advocate, who testified to additional Facebook posts authored by petitioner. Petitioner objected to this testimony. The circuit court overruled petitioner's objection and directed the DHHR to provide petitioner with copies of the additional posts.

At the conclusion of the dispositional hearing, the circuit court found that petitioner failed to make sufficient efforts to rectify the conditions of abuse and neglect and follow through with the case plan and other services. The circuit court also found that petitioner attempted to justify her noncompliance in an indefensible manner, failed to submit evidence that she admitted herself into a drug rehabilitation program, and failed to participate in required drug screens. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her guardianship rights was necessary for the child's welfare. The circuit court terminated petitioner's guardianship rights by order entered on November 20, 2019. The circuit court also ordered that petitioner cease visitation with A.W. or any of the children involved in the proceedings because she presented a danger to all of the children. It is from this dispositional order that she now appeals.[3]

---

[3]The parents' parental rights to the child were terminated below. The permanency plan is for the child to be adopted by his current foster family.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period because she acknowledged the issues of abuse and neglect and took steps to remedy them. Petitioner argues that she attended parenting and adult life skills classes, participated in random drug screens, and attended visits with the child. According to petitioner, all of her drug screens ordered by the circuit court were negative. Petitioner admits that she failed to participate in a long-term drug treatment program but claims that she stopped using Suboxone on her own within nineteen days. As such, petitioner asserts that she showed sufficient improvement to warrant the granting of an improvement period. Upon our review, we find that petitioner is entitled to no relief.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

While petitioner avers that she showed some compliance with services, the record shows that petitioner failed to correct the conditions of abuse and neglect that led to filing of the abuse and neglect petition. Specifically, the circuit court found that petitioner continued to abuse drugs throughout the proceedings, despite her supposedly negative drug screens. Although petitioner denies that she manipulated her drug screens or abused controlled substances, such as methamphetamine, CPS workers and her own physician testified to the contrary. Petitioner testified that she did not knowingly use methamphetamine and claimed that her daughter put the drug in her flavored water to punish her. However, petitioner admitted that her own story was "unlikely" during her testimony. As a result, the circuit court found her testimony incredible. On appeal, we decline to disturb the court's credibility determination with regard to this testimony. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Further, petitioner failed to participate in a long-term drug rehabilitation program despite the circuit court's order. In fact, petitioner does not dispute that she failed to successfully complete a seven-day detoxication program that would transition into a nine-to-twelve-month treatment program. Petitioner asserts that she completed detoxication from Suboxone on her own accord within nineteen days. However, petitioner provides no evidence to support this assertion. On the contrary, the evidence shows that petitioner was actively abusing Suboxone beyond that which her doctor prescribed. Additionally, petitioner violated the circuit court's orders and confidential nature of the abuse and neglect proceedings by posting about the case on social media. As such, by continuing to abuse drugs and refusing to participate in treatment, petitioner has failed to make any substantial changes to her circumstances despite the DHHR's prior interventions and services. Therefore, it is clear that petitioner was unlikely to fully participate in an improvement period, and we therefore find no error in the circuit court's decision.

Next, we note that petitioner fails to challenge the circuit court's ultimate finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of her guardianship rights was necessary for the welfare of the child. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the record fully supports the requisite findings, we find no error in the circuit court's termination of petitioner's guardianship rights without the imposition of a less restrictive dispositional alternative, such as the improvement period that petitioner requests on appeal.

Finally, petitioner argues that the circuit court erred in denying her motion for post-termination visitation because she had custody of and established a relationship with the child. We find petitioner's argument unavailing.

In regard to post-termination visitation, we have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the circuit court found it was not in A.W.'s best interests to have contact with petitioner. The circuit court found that petitioner demonstrated a "reckless disregard" for the child's safety and wellbeing and represented a danger to him. During the proceedings, petitioner continued to abuse drugs yet denied the same. Further, petitioner violated the confidential nature of the abuse and neglect proceedings by discussing the case and the child on social media in violation of the circuit court's orders. Given that continued contact with the child posed a danger to his wellbeing, we find no error in the circuit court's denial of petitioner's motion for post-termination visitation with the child.[4]

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 20, 2019, order is hereby affirmed.

---

[4]Petitioner raises a third assignment of error in which she alleges that the circuit court erred in issuing a no contact order barring her from contact with other children involved in the abuse and neglect proceedings. We note, however, that petitioner provides no substantive argument in support of her assertion that the circuit court erred in issuing its no contact order, which is in direct contradiction to this Court's rules. Specifically, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the points of fact and law presented . . . and citing the authorities relied on." Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief in regard to this assignment of error is inadequate as it fails to comply with West Virginia Rule of Appellate Procedure 10(c)(7) and our December 10, 2012, administrative order. Accordingly, the Court will not address this assignment of error on appeal.

Affirmed.

**ISSUED**:  June 22, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton